IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN SAMUELS,                        )<br>                                        )<br>              Plaintiff,        )<br>                                        )<br>v.                              )<br>                                        )<br>COMMISSIONER OF SOCIAL          )<br>SECURITY ADMINISTRATION,        )<br>                                        )<br>              Defendant.        ) | Case No. CIV-18-341-RAW-KEW |

## REPORT AND RECOMMENDATION

Plaintiff Stephen Samuels (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 46 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade with

3

special education classes. Claimant worked in the past as a stocker and grinder. Claimant alleges an inability to work beginning March 1, 2015 due to limitations caused by left eye blindness, difficulty with basic math and reading, and chronic ear infections.

## Procedural History

On October 23, 2015, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 12, 2017, Administrative Law Judge ("ALJ") Deidre Dexter conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On September 5, 2017, the ALJ issued an unfavorable decision. On August 13, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential

4

evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's conditions meet or equal a listing; (2) reaching an improper RFC; and (3) making improper findings at step five.

## Consideration of Meeting or Equaling a Listing

In her decision, the ALJ determined Claimant suffered from the severe impairments of a history of abnormal visual acuity in the left eye, borderline intellectual functioning, and status post mastoidectomy of the left ear. (Tr. 19). The ALJ found Claimant retained the RFC to perform a full range of work at all exertional levels with non-exertional limitations of the ability to perform a job which does not require vision out of the left eye and does not require depth perception. The job should also involve no more than moderate noise. Claimant should never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous moving mechanical parts. Claimant was found to be able to perform simple, routine, and repetitive tasks. He could occasionally

interact with supervisors as needed to receive work instructions. He was able to work in proximity to co-workers but should have no more than occasional direct work interaction with them. He should never interact with the general public. Claimant could work in a job with involved no more than ordinary and routine changes to work setting or work duties. Finally, the job should not require more than simple reading, writing, or math. (Tr. 20).

After consultation with a vocational expert, the ALJ found Claimant could not perform his past relevant work but could perform the representative jobs of janitor, laundry worker, and bakery worker, all of which were found to exist in sufficient numbers in the national economy. (Tr. 27-28). As a result, the ALJ found Claimant was not under a disability from March 1, 2015 through the date of the decision. (Tr. 28).

Claimant first contends the ALJ failed to properly evaluate whether his mental conditions met or equaled a listing. Specifically, Claimant asserts that Listing 12.05 applies to his particular situation.

On February 4, 2016, Claimant underwent a psychological evaluation by Dr. Robert L. Spray, Jr. Dr. Spray administered the Wechsler Adult Intelligence Scale-IV test to Claimant. Claimant

attained a Full Scale IQ of 64 on the testing. Dr. Spray noted that "[t]his score is not a good representation of his overall cognitive functioning because of the variability among the Index Scores." (Tr. 392). Claimant's Index Scores were Verbal Comprehension – 61; Perceptual Reasoning – 90; Working Memory – 58; and Processing Speed – 62. Id. Claimant's verbal reasoning skills were "in the extremely low range." Nonverbal reasoning skills were "in the average range." Working memory and processing speed were "in the extremely low range." He diagnosed Claimant with Intellectual Disability, mild and Hearing Impairment, by history. Id.

Listing 12.05 provides:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current

7

intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

8

20 C.F.R. § Pt. 404, Subpt. P, App. 1

Claimant has the burden at step three to demonstrate through medical evidence that her impairments meet all the criteria in the listing. Riddle v. Halter, 10 F. App'x. 665, 667 (10th Cir. 2001) (citing Sullivan v. Zebely, 493 U.S. 521, 530 (1990). Defendant does not contest that Claimant meets the intellectual limitations of 12.05 but contends that Claimant has failed in the threshold test to demonstrate deficits in adaptive functioning. The ALJ found that 12.05 no longer governs Claimant's mental condition but rather 12.11. She evaluated Claimant under that criteria.

Listing 12.11 provides:

> 12.11 Neurodevelopmental disorders (see 12.00B9), satisfied by A and B:
>
> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> 1. One or both of the following:
>
> a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
>
> b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
>
> 2. Significant difficulties learning and using

9

academic skills; or

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

As Defendant correctly points out, the evaluation under the "paragraph B" criteria remains the same for both Listing 12.05 and 12.11. Claimant attempts to point out areas which "clearly evidenced" deficits in adaptive functioning such as poor school and work performance, problems during medical examinations, and memory problems. None of these indicate the level of marked limitations required by the Listings. The ALJ accurately related Claimant's functional abilities and concluded that they did not meet the severity level required by the Listings. (Tr. 19-20). Claimant has not pointed the Court to any findings by a mental

health professional which indicates the marked deficits in the functional areas required by the Listings. Claimant attempts to argue that all of Claimant's problems bundled with the low subtest scores meets the equivalency requirements of the Listings. Claimant does not direct this Court to either legal authority or professional opinions which would lead this Court to that conclusion. No error is attributed to the ALJ's consideration of the relevant Listings at step three.

### RFC Determination

Claimant challenges the ALJ's RFC conclusions. To that end, he contends the ALJ did not link the evidence to the RFC findings and did not adequately consider his subjective statements.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on

a "regular and continuing basis" and describe the maximum amount
of work related activity the individual can perform based on
evidence contained in the case record. Id. The ALJ must "explain
how any material inconsistencies or ambiguities in the evidence in
the case record were considered and resolved." Id. However,
there is "no requirement in the regulations for a direct
correspondence between an RFC finding and a specific medical
opinion on the functional capacity in question." Chapo v. Astrue,
682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment
was supported by substantial evidence. Claimant states that the
ALJ did not affirmatively link her findings in the RFC to the
evidence. The ALJ recited the evidence and weighed the opinion
evidence. Claimant's primary complaint appears to be that the ALJ
discounted his subjective complaints with regard to the extent of
his limitations. Evaluation of the symptoms alleged by a claimant
is in the province of the ALJ and this Court will not invade that
determination if the findings are supported by substantial
evidence. Diaz v. Sec. of Health & Human Servs., 898 F.2d 774,
777 (10th Cir. 1990).

   The ALJ accommodated many of Claimant's assertions of
limitation in the RFC, including the inability to see out of

his left eye (Tr. 20, 46); dizziness (Tr. 20, 52); hearing problems (Tr. 20, 53); borderline intellectual capacity (Tr. 20, 251). Other suggestions such as dizziness caused by ear infections which would require Claimant to miss work and not stay on task are not supported by the record. Claimant sought treatment for dizziness three times before the onset date and only stated that he was "feeling a little dizzy." (Tr. 366). Claimant has not demonstrated a worsening of this condition which would preclude engaging in basic work activities.

Moreover, the ALJ properly considered Claimant's subjective statements including his activities of daily living. Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). The inconsistencies indicated by the ALJ were sufficient to discount such statements. (Tr. 25). This Court finds no error in the ALJ's RFC determination.

### Step Five Determination

Claimant also contends the ALJ's hypothetical questioning of the vocational expert was erroneous because the questions incorporated a flawed RFC. Since this Court has found the ALJ's RFC was supported by substantial evidence and the questioning mirrored the RFC limitations, no error is

found at step five.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE